IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS C. TYLER, | ) | |
| | ) | CASE NO. 05:08CV1047 |
| Plaintiff, | ) | |
| | ) | JUDGE DOWD |
| v. | ) | |
| | ) | |
| SENTO CORPORATION, et al., | ) | MAGISTRATE JUDGE PEARSON |
| | ) | |
| Defendants. | ) | <u>REPORT AND RECOMMENDATION</u> |
| | ) | |

This matter is before Magistrate Judge Pearson pursuant to a referral from District Court

Judge Dowd under 28 U.S.C. § 636(b)(1) and Local Rule 72.1. On May 9, 2008, Defendants

Sento Corporation and Xtrasource Acquisition, Inc. filed a Motion to Dismiss For Lack of

Personal Jurisdiction, pursuant to Rule 12(b)(2) of the Rules of Civil Procedure, or, in the

alternative, to Transfer Venue to Utah, pursuant to 28 U.S.C. § 1404(a). (ECF No. 11). For the

reasons set forth in detail below, the Magistrate Judge recommends that the motion be denied in

its entirety.

## I. Pleadings

The parties have briefed the issues and, in some cases, filed competing affidavits and

other documents in support of their positions. These filings include Defendants' motion to

dismiss or transfer, Plaintiff's opposition, Defendants' reply and Plantiff's sur-reply (ECF Nos.

11, 15, 16 and 19).[1]

## II. Legal Standard

The party seeking to assert personal jurisdiction bears the burden of demonstrating that

such jurisdiction exists.  Given that no evidentiary hearing on the issue of personal jurisdiction

has been held, Plaintiff need only make a prima facie showing of jurisdiction.  *Neogen Corp. v.*

*Neo Gen Screening, Inc.* 282 F.3d 883, 887-88 (6th Cir. 2002); *CompuServe, Inc. v. Patterson*, 89

F.3d 1257, 1262 (6th Cir. 1996). The facts are construed in the light most favorable to the

nonmoving party.  *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

Further, a "court disposing of a 12(b)(2) motion does not weigh the controverting assertions of

the party seeking dismissal, because we want 'to prevent non-resident defendants from regularly

avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts.'"

*Reynolds v. International Amateur Athletic Federation,* 23 F.3d 1110, 1459 (6th Cir. 1994).

Ultimately, dismissal in this procedural posture is proper only if all the specific facts which the

plaintiff alleges collectively fail to state a prima facie case for personal jurisdiction. *Id.*

## III. Analysis

Plaintiff is a resident of Ohio.  Defendant Sento's corporate headquarters was, at all times

most relevant, located in Utah. Xtrasource, at all times most relevant, was a Delaware

corporation with its principal place of business in Utah.[2]

---

[1]Plaintiff sought and received permission to submit a supplemental brief relating to the motion to dismiss. (*See* ECF No. 29 and subsequent non-document Order and ECF No. 31).

[2]Plaintiff's recently received supplemental brief indicates that the Defendants' headquarters and principal place of business is no longer located in Utah; and some of Defendants' possible witnesses are no longer located in Utah. No further details were provided.  These matters will be discussed later in this Recommendation. (Plain. Supp.

The Court has subject matter jurisdiction over this matter based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 (2005). (Def. Notice of Removal, p. 2). (ECF No. 1). A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment. *Reynolds*, 23 F.3d at 1115; *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980); *In Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir. 1972). The foundation of personal jurisdiction due process analysis is that when the defendant is not physically present in a forum, it must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). Minimum contacts exist when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The Ohio long arm statute allows an Ohio court to exercise personal jurisdiction over nonresidents of Ohio on claims arising from, among other things, the nonresident transacting any business in this state and the nonresident contracting to supply services or goods in this state.[3] O.R.C §2307.382(A); *CompuServe*, 89 F.3d at 1262.

Personal jurisdiction may be based on either general or specific jurisdiction. Each is an adequate basis for personal jurisdiction. *See, e.g., Burger King v. Rudzewicz*, 471 U.S. 462, 475

Brief in Opp. to Def. Mot. to Diss.,pgs. 2-3). (ECF No. 31).

[3] Defendants claim the Ohio long arm statute does not apply. The facts presented by the plaintiff (as further discussed below) contradict Defendants' position.

(1985). General jurisdiction is proper only where a "defendant's contacts with the forum state are of such a continuous and systemic nature that the state may exercise personal jurisdiction over the defendant even if the action filed is unrelated to the defendant's contacts with the state." *Bird v. Parsons*, 289 F.3d 865,873 (6th Cir. 2002) (quoting *Third Natl. Bank in Nashville v. WEDGE Group, Inc*., 882 F.2d 1087, 1089 (6th Cir. 1989)). Specific jurisdiction occurs where "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. " *Helicopteros Nacionales de Colombia*, 466 U.S. 408, 414 (1984). Specific jurisdiction over the defendant is permissible only if the defendant's contacts with Ohio satisfy the three-part test that the Sixth Circuit court established in *Southern Machine Company v. Mohasco Industries, Inc*., 401 F.2d 374, 381 (6th Cir. 1968). Specific jurisdiction has been upheld in cases where doing so required the defendant to travel. *See, e.g. Lanier v. Am. Bd. Of Endodontics*, 843 F.2d 901, 911-12 (6th Cir. 1988) (upholding jurisdiction in Michigan over Illinois defendant); *Am Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170-71 (6th Cir. 1988) (allowing jurisdiction in Michigan over California defendant). In the instant matter, the Defendants claim that this Court lacks general and specific jurisdiction. The Court disagrees.

A. **Jurisdiction**

1. **General Jurisdiction**

Defendants claim that Plaintiff cannot establish general jurisdiction because "Defendants are not licensed to do business in Ohio, have no employees in Ohio, and do not own any property in Ohio." (Defs' Mem. Supp. Mot. Diss. pg. 5). (ECF No. 16). Further, "[Defendants] have no customers in Ohio, and while there were customers in the past, they were not significant to the

4

business of [Defendants]."[4] *Id.* To establish general jurisdiction, the Defendants' contacts with the forum state must be of a continuous and systemic nature.

Two Supreme Court cases specifically speak to general jurisdiction; *Helicopteros Nacionales de Colombia v. Hall* and *Perkins v. Benguet Consolidated Mining Company.* In *Helicopteros,* the Supreme Court held that the contacts between a nonresident defendant corporation and the state of Texas were insufficient to support the exercise of general jurisdiction. 46 U.S. 408, (1984). Further, the nonresident defendant corporation lacked a place of business in Texas; had never been licensed to do business in Texas; sent the CEO to Houston for contract negotiating; accepted checks drawn on a Houston a bank account; purchased helicopters, equipment and training services from a company located in Fort Worth and; sent personnel to Fort Worth for training. *Id.* The Court explained that the first contact for contract negotiations was a one-time event and the second was of "negligible significance." *Id.* Regarding the latter contacts, the Court held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions. Further the fact that the nonresident defendant corporation sent personnel to training sessions in connection with those purchases did not enhance the contacts with Texas. *Id.*

In *Perkins*, the Supreme Court held that general jurisdiction over a nonresident defendant corporation was appropriate as, while in Ohio, the President of the corporation had carried on continuous and systemic supervision of the corporation's activities. 342 U.S. 437 (1952). Moreover, the President of the nonresident defendant corporation maintained an office in Ohio

---

[4]As discussed below, without specifying the names of the clients, Defendants acknowledge having had clients in Ohio. (Def. Opp. Mem. Supp. Mot. Diss. pg. 6). (ECF No. 16).

where he "conducted personal affairs and did many things on behalf of the corporation."*Id*. The President kept company files in the office; held meetings at the office; carried on correspondence relating to the business and employees; distributed salary checks drawn on two active Ohio bank accounts; engaged an Ohio bank to act as transfer agent; and supervised policies dealing with the rehabilitation of the corporation's properties in the Philippines. *Id.*

As in *Perkins* and in contrast to *Helicopteros*, in the instant matter Plaintiff maintained an office at his personal residence in Ohio. Defendants "maintained network and office files" in the Ohio home office and Plaintiff held meetings with Defendants' executives at the Ohio home office. (Plain. Brief Opp. Def. Mot. Diss. at ¶11, pg. 4). (ECF No. 15). Further, Plaintiff "carried on correspondence relating to business and employees" of the Defendants from the Ohio home office. Plaintiff provided correspondence, letterhead and business cards (approved by Defendants), with Plaintiff's Ohio home office address, as proof that Defendants not only knew about the Ohio office but sanctioned the office. (Plain. Brief Opp. Def. Mot. Diss. at ¶¶7,8, pg. 3).(ECF No. 15). Finally, similar to the President in *Perkins*, here the Plaintiff supervised the Defendants' marketing and sales operations in the European and domestic offices from Ohio, when he was not traveling. (Plain. Brief Opp. Def. Mot. Dis. at ¶6, pg. 3). (ECF No. 15).

The major difference between these two cases is the events in *Helicopteros* were deemed insignificant and/or a one-time event, whereas the events in *Perkins* were ongoing operations. This is similar to the situation in the instant matter in that, as long as Plaintiff was Defendants' employee he was allowed to continuously work from, conduct business from and supervise from the Ohio home office. (Plain. Brief Opp. Def. Mot. Diss. at ¶¶6, 7, pg. 3). (ECF No. 15). Plaintiff was not an independent contractor and his relationship with the Defendants was not a "one-time"

deal. Plaintiff only agreed to enter the employment contract after Defendants agreed to allow him to work from an Ohio office. (Plain. Brief Opp. Def. Mot. Diss. at ¶¶6,7, pg. 3). (ECF No. 15).

By agreeing to allow Plaintiff to work from Ohio, the Defendants began a "continuous" relationship with Plaintiff in the state of Ohio. Defendants knew Plaintiff would carry out his duties from Ohio and even paid part of the Plaintiff's office expenses to assist Plaintiff in carrying out his duties. (Plain. Brief Opp. Def. Mot. Diss. at ¶10, pg. 4). (ECF No. 15). The Defendants cannot decide to have an Ohio office when it is in their corporations' best interest, and later decide to disavow that Ohio office when its existence becomes inconvenient.

### 2. Specific Jurisdiction

Defendants claim that the Plaintiff cannot establish specific jurisdiction because Plaintiff has not made a prima facie showing and further cannot satisfy the requirements of due process. To establish specific jurisdiction Plaintiff must demonstrate that such an exercise would not "offend traditional notions of fair play and substantial justice," *Bird*, 289 F.3d at 871-72. To make a prima facie showing of jurisdiction the Plaintiff must satisfy a three-part test: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the Defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the Defendants reasonable. *Id* (quoting *Mahasco Indus., Inc.,* 401 F.2d at 381).

### a. Purposeful Availment

Generally, "'purposeful availment' is something akin to deliberate[ly] undertaking to do, or cause an act, or thing to be done…or conduct which can be properly regarded as a prime

generating cause of the effects resulting in… something more than a passive availment of… opportunities." *Neogen,* 282 F.3d at 891(quoting *Khalaf v. Bankers & Shippers Ins. Co.*, 273 N.W.2d 811, 819 (Mich. 1978)). It is necessary that a defendant "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475.

The Sixth Circuit has held that where it is shown that one party reasonably expects to conduct a given level of business in the forum state continuously, the plaintiff has established a prima facie jurisdiction case. *CompuServe,* 89 F.3d at 1265. "The test is whether the absolute amount of business conducted by the defendants in the state represents something more than 'random, fortuitous, or attenuated contacts' with the state." *Neogen,* 282 F.3d at 892 (quoting *Burger King*, 471 U.S. at 475). This requirement does not mean that a defendant must be physically present in the forum state. *Burger King,* 471 U.S. at 476. A defendant has "purposefully availed" himself of a forum by engaging in activity that should provide "fair warning" that he may have to defend a lawsuit there. *See World-Wide Volkswagon*, 444 U.S. at 297 (explaining that purposeful availment requirement assures that defendant will be aware that it is subject to suit in forum state).

The Supreme Court has found that "a single act may meet the purposeful availment requirement." *Youn v. Track, Inc.*, 324 F.3d 409, 419; *see also, McGee v. Int'l Life Ins.Co.,* 355 U.S. 220, 223 (1957) (finding that a single contract, entered into by mail with a forum state resident, could meet the minimum contacts test for suit on the contract).

In the instant matter, the Plaintiff and Defendants entered into an employment agreement with the understanding that Plaintiff would be working from an Ohio office and

would mostly telecommute to any meetings in Utah, the location of defendants. (Plain. Brief Opp. Def. Mot. Diss. at ¶6, pg. 3, ¶16, pg. 5). (ECF No. 15). This understanding meant that Plaintiff would be directing his staff (*i.e.* other employees of Defendants) from Ohio, contacting and meeting with clients/customers from Ohio, making phone calls from Ohio, sending other correspondence from Ohio, and generally supervising his division/departments from Ohio. (Plain. Brief Opp. Def. Mot. Diss. at ¶20 pg. 5). (ECF No. 15). Further, Defendants approved letterhead and business cards with the Ohio home office address printed on the business card and letterhead as contact information for plaintiff. (Plain. Brief Opp. Def. Mot. Diss. at ¶8, pg. 3). (ECF No. 15). Because of the activities conducted in Ohio by Plaintiff, Defendants' Senior Vice President, there was a strong possibility that Defendants, as the Plaintiff's employer, "should reasonably [have] anticipate[d] being haled into court [in Ohio]." *Id* at 475.

According to *CompuServe*, business is transacted when obligations created by the defendant <u>or</u> business operations set in motion by the defendant have a realistic impact on the commerce of that state. The defendant, therefore, has purposefully availed himself of the opportunity of acting in that state, if he should have reasonably foreseen that the transaction would have consequences in that state. 89 F.3d at 1265.

When Defendants entered into an employment agreement with Plaintiff and agreed to allow Plaintiff to work in Ohio from his home office, Defendants deliberately set in motion an ongoing relationship with Plaintiff and any business he would conduct in Ohio and from Ohio on Defendants' behalf. Further, Defendants should have known that 'purposefully availing' themselves of Plaintiff's employment in Ohio may have consequences in Ohio considering Defendants' had clients and a software provider in Ohio, and Plaintiff (acting from Ohio) was in

charge of all sales and marketing nation and worldwide. (Plain. Brief Opp. Def. Mot. Diss. ¶¶18, 19 pg. 5). (ECF No. 15). Also, it was foreseeable that Plaintiff may solicit and possibly do business with other businesses in Ohio.

        b.        **Cause of Action Arises from Defendants' Activities**

       Defendants claim that Plaintiff's causes of action do not arise from Defendants' activities, as the causes of action are based on the alleged breach of an employment agreement and later the amendment to that agreement that were both negotiated, signed and performed in Utah.  Further, the only connection with Ohio was the fact that Defendants allowed Plaintiff to (tele)commute from Ohio to Utah. (Defs' Mem. Supp. Mot. Diss. at 7). ( ECF No. 16).

       Generally, "if a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Id* at 1267. In the instant matter, events subsequent to the execution of the employment agreement have placed the Plaintiff and the Defendants in a dispute.  The Plaintiff and Defendants' dispute when and where the initial and later amended employment agreements were negotiated, executed and performed. However, in considering a motion to dismiss, this Court is mindful that "the court must construe the complaint in a light most favorable to the plaintiff, and accept all of the factual allegations as true. *Neogen,* 282 F.3d at 887-88. Therefore, although Defendants' allege that the employment agreement was signed, executed and performed in Utah; this Court should look to Plaintiff's facts.

       Plaintiff provides specifics as to where and how negotiations took place in the Ohio office, and how he fulfilled his obligations under the agreement. Plaintiff says that he conducted all of his employment agreement negotiations with Defendants from Ohio except for one

meeting held in South Carolina (which is still not in Utah). Also Plaintiff performed the "vast majority of his obligations" under the agreement in Ohio.[5] (Plain. Brief Opp. Def. Mot. Diss. pg. 8). (ECF No. 15). Finally, all negotiations for the amendment to the employment agreement were conducted via telephone and electronic means by Plaintiff from the Ohio office. Plaintiff also executed the amendment to the employment agreement in the Ohio office. (Plain. Brief Opp. Def. Mot. Diss. pg. 9). (ECF No. 15).

According to Plaintiff's facts, the employment agreement was negotiated, executed and performed from Ohio. Therefore the operative facts of this controversy are related to obligations created by an employment agreement negotiated, executed and performed in Ohio by Defendants and Plaintiff. So it can safely be said that the Defendants' contacts with Ohio are related to the operative facts of this controversy and the Plaintiff's causes of action arose from those contacts.

### c.        Reasonableness

Generally, if a court finds the first two elements of the prima facie case, then an inference arises that the third element of reasonableness is also present. *Id* at 1268. However, there are several factors that a Court may consider in determining whether personal jurisdiction is reasonable, including "… the burden on the Defendants, the interest of the forum state, the plaintiffs interest in obtaining relief and the interest of other states in securing the most efficient resolution of controversies." *Id* (quoting *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1170 (6th Cir.1982); *Mohasco Indus.,* 401 F.2d at 384). These additional factors are briefly

---

[5] Plaintiff broke down his business activities during his employment with Defendants from January 2005 through March 10, 2008. Plaintiff spent the following amounts of time in these locales: Utah – 72 days (6.2%); Europe – 151 days (13%); United States but outside Ohio – 80 days (6.9%); and Ohio – 861 days (74 %).

discussed below.

**Burden on the Defendants**: According to the Plaintiff, the burden on the Defendants is minimal as the pertinent documents are in Ohio, and the Defendants have previously flown to Ohio for meetings, so flying to Ohio for court should not be a problem. [6](Plain. Brief Opp. Def. Mot. Diss. pg. 15). (ECF No. 15).

**Interest of the forum state**:  As Plaintiff is a citizen of the state of Ohio, Ohio has an interest in making sure that its citizens are treated fairly and afforded access to the proper courts if it appears they have not been treated fairly. Further, Ohio has an interest in making sure that corporations that do business within the State of Ohio treat its citizens fairly and do not take unfair advantage of their nonresident status.

**Plaintiff's interest in obtaining relief**: Plaintiff has an interest in obtaining monetary damages owed to him by Defendants as well as any other justifiable relief.

**Interest of other states in securing the most efficient resolution of controversies**: Utah would certainly have an interest in securing an efficient resolution of a controversy involving her citizen corporations. To that end, however, Plaintiff has  provided evidence that indicates an even more efficient (or at least more speedy) resolution could be reached in the Northern District of Ohio. Plaintiff's unverified statistics urge that this matter could be resolved eight months sooner, if litigated in Ohio. (Plain. Brief Opp. Def. Mot. Diss. pg. 15-16). (ECF No. 15).

### d.      Conclusion as to Personal Jurisdiction

The facts, especially when considered in the light most favorable to Plaintiff, reveal that (1) Defendants purposefully availed themselves of the privilege of acting in Ohio when they executed an employment agreement with Plaintiff in Ohio and permitted Plaintiff to open and operate, on behalf of Defendants, an Ohio-based office; (2) Plaintiff's causes of action arose from that agreement and Plaintiff's resultant work arrangement in Ohio; and (3) the acts of the Defendants have a substantial enough connection with Ohio to make the exercise of jurisdiction

---

[6] The Defendants would argue the burden is more than minimal as they believe all pertinent documents and witnesses are in Utah and would have to be transported to Ohio.

over the Defendants reasonable and not at all unexpected.

## B. <u>Transfer of Venue Generally</u>

28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The purpose of § 1404(a) is "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Moore v. Rohm & Haas Co.,* 497 F. Supp.2d 855, 858 (N.D. Ohio, 2007) (quoting *Van Dusen v. Barrack*, 376 US 612, 616 (1964)). Section 1404(a) is intended to provide the district court with discretion to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Organization v. Ricoh Corporation,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622).

In exercising its discretion, the Court should keep in mind that a "large measure of deference is due to plaintiff's freedom to select his own forum, "and according to the Supreme Court in *Gulf Oil Co. v. Gilbert*, the "…plaintiff's choice of forum should seldom be disturbed unless the balance is strongly in favor of the defendants. " *Mead Corp. v. Boldt Constr. Co.,* 508 F. Supp. 193, 197-98 (S.D. Ohio 1981) (quoting, *Gulf*, 330 U.S. 501 (1947)). Furthermore, the presence of a contractual forum selection clause is just one fact to consider. *Id (*quoting *Stewart Org., Inc.* 487 U.S. at 31).

The movant has the burden of demonstrating that a transfer is appropriate. The relevant factors the Court may consider in determining whether the matter should be transferred are: "(1) convenience of the parties, (2) convenience of the witnesses, (3) the interests of justice, and (4) whether the civil action might have been brought in the district to which the movant requests a

13

transfer." [7] *Moore,* 497 F. Supp.2d at 858 (quoting *Central States Southeast & Southwest Areas*

*Health and Welfare Fund v. Guarantee Trust Life Ins. Co.* 8 F. Supp.2d 1008, 1011 (N.D. Ohio

1998)); *Roberts Metals, Inc. v. Florida Properties Marketing Group, Inc.,* 138 F.R.D. 89, 91-92

(N.D. Ohio 1991), *aff'd* 22 F.3d 1104 (Fed. Cir. 1994).

## 1. Transfer of Venue to Utah

### a.       Forum Selection

Defendants claim that because the original employment agreement and amended

employment agreement provide that Utah law shall apply, this matter should be physically heard

in Utah. The original employment agreement provision that covers the governing laws reads as

follows:

> Governing Law. This agreement and all matters or disputes relating to the validity,
> construction, performance or enforcement hereof, shall be governed, construed and
> controlled by and under the laws of the State of Utah without regard to principles of
> conflicts of law.

Xtrasource Acquisition, Inc. Employment Agreement ¶12 (d). Although the Plaintiff agrees that

the employment agreement states that Utah law shall apply,[8] he correctly counters that there is

---

[7] Defendants cite the factors in *Mead,* 508 F. Supp. 193, 197-198 (S.D. Ohio 1981). Although the test in *Mead* has not been overturned, the test stated above was more recently used in the Northern District of Ohio. In *Mead* there are generally two factors that the court may consider in determining whether, a transfer of venue is proper. The first factor to be considered is the private interest of the litigant, including: (a) relative ease of access to sources of proof; (b) availability of compulsory process for attendance of unwilling; © cost of obtaining attendance of willing witnesses; (d) possibility of view of premises; (e) all other practical problems that make trial of a case easy, expeditious and inexpensive. The next factor is the applicable law, specifically the appropriateness of having the trial in a diversity case in a forum that is at home with the state law that must govern the case.  Reliance on the *Mead* factors would not change the Recommendation in this case.

[8] When exercising diversity jurisdiction, the Court applies the forum state's choice of law rules to determine which state's substantive law applies." *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 495-97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Miller v. State Farm Mut. Auto. Ins. Co.,* 87 F.3d 822, 824 (6th Cir.1996).  "When a choice of law provision is incorporated in a contract, [t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied unless [1] either the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties' choice, or [2] application of the law of the chosen state

no forum selection clause. Plaintiff argues, "where venue is specified [in a forum selection clause] with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified [in a forum selection clause], the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *Travelers Prop. Cas. Co. of Am. v. Centimark Corp*., No. 2:04-CV-0916, 2005 U.S. Dist. LEXIS 35611 at *7-8 (S.D. Ohio May 3, 2005) (quoting *K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.23d 494 (10th Cir. 2002)).

In *K & V Corp*. the plaintiff filed a breach of contract claim in Colorado state court; defendant removed to U.S. District Court and then filed a motion to dismiss for lack of venue. The defendant argued that the forum selection clause required that the case be brought in Munich, Germany. The district court agreed, reasoning that the forum selection clause was unambiguous and enforceable and demonstrated the parties' intent to locate jurisdiction solely in Munich. However, the appellate court reversed, finding the forum selection clause contained permissive, not mandatory, language and addressed jurisdiction but not venue and therefore was not enforceable.

---

would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice of by parties." *Schulke Radio Prod., Ltd. V. Midwestern Broad. Co.*, 6 Ohio St. 3d. 436 (1983) (syllabus).

Under Ohio law, before engaging in any choice of law analysis, a court must first determine whether such analysis is necessary. *Akro-Plastics v. Drake Indus.*, 115 Ohio App.3d 221, 685 N.E.2d 246, 248 (1996); *accord McDonald v. Williamson*, No. 81590, 2003 WL 22922271, at *2 (Ohio App. Dec. 11, 2003). If the two states would use the same rule of law or would otherwise reach the same result, it is unnecessary to make a choice of law determination because there is no conflict of law. *Akro-Plastics* at 248 (citing, *inter alia*, Restatement (Second) of Conflict of Laws § 1 cmt. b (1971)). Where the party seeking application of the law of a foreign jurisdiction fails to demonstrate a conflict between local law and the law of that jurisdiction, local law governs. *Gouge v. BAX Global, Inc.*, 252 F.Supp.2d 509, 521 (N.D.Ohio 2003) (citing *Cross v. Carnes*, 132 Ohio App.3d 157, 724 N.E.2d 828, 836 (Ohio App. 1998), *Akro-Plastics*, 685 N.E.2d at 248, and *Avenell v. Westinghouse Elec. Corp.*, 41 Ohio App.2d 150, 324 N.E.2d 583, 586 n. 3 (Ohio App. 1974)). The referral of this matter does not require the determination of the appropriate law to be applied in this matter. Therefore, the Court does not make such a recommendation.

*K & V Corp.* gives several examples from different Circuits of forum selection clauses that are mandatory rather than permissive. One such example is of a 6th Circuit case where the court interpreted a forum selection clause that reads as follows:

> Place of jurisdiction for all disputes arising in connection with the contract shall be at the principal place of business of the supplier. This shall also apply for claims in summary procedures on bills of exchange, promissory notes or cheques. The supplier is also entitled to file a suit at the principal place of business of the purchaser.

*General Electric Co. v. G. Siempelkamp Gmbh & Co.,* 29 F.3d 1095, 1097 (6th Cir.1994).

In contrast to the instant clause, the *General Electric* clause specified where the parties should bring their case, and seems to require all disputes to be resolved exclusively at the principal place of business of the supplier, thereby dispelling any doubt as to where a suit may be filed. In the instant clause, the language reads that all matters and disputes must be "governed, construed and controlled by and under the laws of the State of Utah," not that the matters or disputes must be litigated in Utah. As the Plaintiff pointed out, this governing laws provision is more like a choice of laws clause and not a mandatory forum selection clause.

### b.    Convenience of the Parties

Defendants allege that the cost of litigating this matter and conducting discovery would be less in Utah, because almost all of the documents/evidence and most of the witnesses are in Utah.

Where several fora are available in which to try a case, some inconvenience to one or more parties will exist no matter which forum is chosen. Consequently, if a change of venue serves merely to shift the inconvenience from the plaintiff to the defendant, a change of venue is improper. *Lassak v. American Defense Systems, Inc*., Slip Copy, 2007 WL 1469408 (S.D.Ohio,2007) (quoting *Raymond E. Danto Associates, Inc. v. Arthur D. Little, Inc.,* 316 F.

16

Supp. 1350 (E.D.Mich.1970)). Consistent with that principle, a generalized assertion by a defendant that witnesses reside in, and documents are located in, the proposed transferee district is generally insufficient to support a change of venue. *Id* (quoting *Hartford Accident & Indemnity Co. v. Dalgarno Transportation, Inc.,* 618 F.Supp 1450 (S.D. Miss.1985)). Rather, the defendant must show a specific hardship involved in transporting documents to the plaintiff's chosen district (*see AMF, Inc. v. Computer Automation, Inc.,* 532 F.Supp. 1335 (S.D. Ohio 1982); *Richards v. Upjohn Co.,* 406 F.Supp. 405 (E.D. Mich.1976) and must also show that witnesses (usually third party witnesses, rather than employees of the defendants) are unwilling to attend a trial in that forum. (See *Gdovin v. Catawba Rental Co.,* 596 F.Supp. 1325, 1327 (N.D. Ohio 1984); *Weltmann v. Fletcher,* 431 F.Supp. 448, 451 n. 3 (N.D. Ohio 1976)). *Id.*

While there will indeed be a cost associated with litigation and discovery, that cost is not necessarily going to be more if the matter is tried in Ohio instead of Utah. [9] The cost of attending proceedings of this Court could be no less than the cost Defendants paid for utilities at the Ohio office for three and one half years or the cost for Defendants' executives to attend meetings at the Ohio office. Further if this matter is tried in Utah the Plaintiff will have to travel back and forth to Utah as well. Regardless of where venue is maintained, certain of the parties will have to travel. To shift the inconvenience from one party to another is not a valid reason to transfer venue. Moreover, as Plaintiff pointed out, in the age of electronic documents and email, any documents can be easily moved from one place to the other. (Plain. Brief Opp. Def. Mot. Diss.

---

[9] Plaintiff believes that the Defendants are making a speculative allegation without substantiation. And further, the cost of litigation and discovery in this matter will not be less in Utah, because the overwhelming majority of the witnesses are non-Utah residents and the documents are in Ohio. (Plain. Brief Opp. Def. Mot. Diss. ¶2, pg. 15). (ECF No. 15).

¶1, pg. 15). (ECF No. 15).

### c.    Convenience of the Witnesses

The Defendants allege that almost all of the witnesses and parties to this matter are outside of the state of Ohio and that most of them reside in Utah, and thus Ohio is not a convenient forum.[10]

The defendants, in *Robert Metals*, made a similar argument. In that case the court found that the defendants' allegations were unsupported by affidavit and provided no factual basis on which to conclude that the convenience of the witnesses weighs in favor of transfer. Further, the court found that the defendants failed to identify the witnesses in Utah and to detail what the witnesses would testify about relative to the Plaintiff's claims. "The court held that the movant's burden consists of more than simply asserting that another forum would be more appropriate for the witnesses; 'he must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district.'" 130 F.R.D. at 91(quoting *Gdovin v. Catawba Rental Co., Inc.*, 596 F.Supp. 1325, 1327 (N.D. Ohio 1984).

In the instant case, the Defendants have provided no evidence and/or affidavits that suggest the witnesses will not attend or will be severely inconvenienced if the case proceeds in Ohio. The Defendants have merely announced that the witnesses will be inconvenienced because of the cost, with no explanation of details such as: (1) how many witnesses will be inconvenienced; (2) the location of all witnesses; or (3) what the cost will be for witnesses to travel.

---

[10]Plaintiff disputes this claim and responds that several of the witnesses do not live in Utah or even the United States. Plaintiff correctly notes that those witnesses would have to travel anyway and that Ohio is just as good a destination as Utah. (Plain. Brief Opp. Def. Mot. Diss. ¶2, pg. 14). (ECF No. 15).

### i. Availability of Compulsory Process for Attendance of Unwilling Witnesses

Customarily, when it is necessary to compel the attendance of a witness via the use of a subpoena, the party desiring the witness' attendance files a miscellaneous suit in a district court (in Utah or elsewhere) within a 100-mile radius of the location of the witness to be compelled and, thereafter, issues subpoenas as necessary. Such a "miscellaneous suit subpoena" may be issued and an otherwise "out-of-range" witness can then be compelled to attend a deposition, hearing or trial within that district where the subpoena has been issued.

Further in *Mead* the court held that compulsory process was not of paramount importance because all of the witnesses listed by the Plaintiff were its own employees, and "as such may be assumed to be obedient to the commands of their employer." Also, "the deposition of any witnesses who are not parties may be taken and submitted to the Court in accordance with Fed. R. of Civ. Pro. 32(a) (3)." 508 F.Supp. at 199. Similarly, in the instant matter, many of the Defendants' and Plaintiff's witnesses are Defendants' current or former employees that will likely obey the command or invitation of their (former) employer. However, if for some reason they cannot, a "miscellaneous suit subpoena" can be obtained or a deposition can be taken and presented at Court.

### ii. Cost of obtaining attendance of willing witnesses

The cost of attending proceedings in Ohio should be no more costly than the costs Defendants paid for its executives to attend meetings at Plaintiff's home office. However, the difference may be that more of Defendants' employees may be required to travel to Ohio for court proceedings and this could be costly for Defendants.

In the instant matter, the Plaintiff is the only identified witness or party in Ohio. However,

not all of the other witnesses are in Utah and would, therefore, have to fly to Utah or Ohio for proceedings in any case. There will be an expense and some inconvenience involved for some of the witnesses regardless of where this matter is tried. [11]

### d.     The Interests of Justice

There seems to be little doubt that it would be more advantageous for the Plaintiff to have this action determined in Ohio and for the Defendants to have this action determined in Utah, however, the interest of justice does not necessarily accommodate the "private interests of the litigants and their witnesses." *Central States*, 8 F.Supp.2dat 1011 (quoting Hanley *v. Omarc, Inc.* 6 F.Supp.2d 770 (N.D.Ill. 1998). In *Central States* the court found that the proposed forum state was "closer to the action" and therefore, litigation in that forum serves the administration of justice more efficiently given those considerations. *Id.*

With the disputes as to when and how events occurred, it is unclear which state would be "closer to the action" and which forum would serve the administration of justice more efficiently. However, Plaintiff has provided enough information to conclude that the interest of justice can be as efficiently served in Ohio as Utah. Defendants have not provided sufficient evidence to suggest otherwise.

### e.     Whether the Civil Action Might Have Been Brought in The District to Which the Movant Requests a Transfer

There is no dispute that a Utah district court would also have subject matter jurisdiction over this matter based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 (2005).

---

[11] Plaintiff noted that "where potential witnesses are located in various states as in this case, one venue is not necessarily preferable over another." *Delta Casket Enters. v. York Group*, No. 05-313-C, 2005 U.S. Dist. LEXIS at *12 (W.D. Ky. Oct. 31, 2005). (Plain. Brief Opp. Def. Mot. Diss. ¶3, pg. 15). (ECF No. 15).

Additionally, the Utah district court would also have general jurisdiction over the Defendants as the Defendant's contacts with Utah would be considered of such a continuous and systemic nature that Utah could exercise personal jurisdiction over Defendants. *Helicopteros,* 466 U.S. at 414. The Defendants are headquartered in Orem, Utah and Defendants readily admit that a bulk of the corporation's business is conducted out of and through their headquarters in Utah.[12] As the Utah district court would have general jurisdiction there is no need to analyze whether Utah would also have specific jurisdiction.[13] There seems to be no dispute that this matter could have been brought in Utah.

### f.      Conclusion as to Change of Venue

The Defendants have asked that the Court dismiss this matter, or in the alternative transfer the matter to Utah. The Defendants ask that this matter be transferred to Utah because it would be inconvenient for Defendants to litigate in Ohio due to costs and the logistics of transporting witnesses to Ohio, among other things. The Defendants also claim it would be much easier to go forward in Utah because the evidence and most of the witnesses are already located in Utah. Further, Defendants believe that Utah is the rightful forum for this matter, as the employment agreement was negotiated, executed and performed in Utah. Plaintiff disputes all of these claims.

Although, this matter could have been brought in Utah and it may also serve the interest of justice to litigate the case in Utah, Defendants have not provided any substantiated proof that

---

[12]As stated earlier, Plaintiff's supplemental pleading indicates that one of the defendant corporations may no longer be in operation. This new and incomplete information does not change the Recommendation.

[13] It is worth noting, however, that in a motion seeking permission to file a supplemental pleading, Plaintiff alleges that the headquarters of Defendant Sento has closed. (Plain. Mot. to file Sup. Brief, pg. 1-2). (ECF NO. 29). This information does not change the Court's analysis or recommendation.

all witnesses and evidence are located in Utah or that the cost of litigation in Ohio would be substantially greater or even prohibitive. In fact, Defendants have agreed that some of the witnesses are located outside of Utah. (Def. Reply Mem. Supp. Def. Mot. Diss. Pgs. 2 and 3). (ECF No. 16). For the reasons stated above, the matter should not be transferred to Utah.

## IV. Recommendation

This matter should not be dismissed for lack of personal jurisdiction, because Plaintiff has made a prima facie showing of general and specific jurisdiction over the Defendants. Moreover, this matter should not be transferred to Utah because Defendants have not shown that they will be inconvenienced, unfairly or otherwise, if forced to litigate this matter in Ohio.

Based on the foregoing, the Magistrate Judge recommends that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or, in the alternative, to Transfer Venue to Utah (ECF. No. 11) be DENIED.

*/s/ Benita Y. Pearson*
Benita Y. Pearson
U.S. Magistrate Judge

Date:October 17, 2008

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** ***See, United States v. Walters***, **638 F.2d 947 (6th Cir. 1981).** ***See, also, Thomas v. Arn***, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**